# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| Philip Amara, individually and on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>- against -<br><br>Publix Super Markets, Inc.,<br><br>                        Defendant | Class Action<br>Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. Publix Super Markets, Inc. ("Defendant") manufactures, labels, markets, and sells an antitussive drug product intended to suppress coughs, tussinDM, promoted as "non-drowsy" under the Publix brand (the "Product").



2.      Plaintiff and consumers want to take over-the-counter ("OTC") drug products that improve their cough, but also lets them be active, either for work, family obligations, or a desire to maintain control of their senses.

3.      To meet this demand, companies promote these OTC products as "non-drowsy."

4.      Oral antitussives contain a variety of approved active ingredients, including dextromethorphan hydrobromide ("dextromethorphan Hbr"). 21 C.F.R. § 341.14(a)(4).

5.      Though the Product is represented as "non-drowsy," it contains dextromethorphan Hbr, which is well-known for causing drowsiness.



6. Numerous governmental agencies and third-parties caution users of products containing dextromethorphan Hbr from engaging in activity which requires them to be alert, because this can cause drowsiness.

7. The representation of "non-drowsy" misleads consumers who expect they are purchasing a cold and flu product that will not make them drowsy or increase the chances they become drowsy.

8. In marketing the Product, Defendant is required to refrain from statements that may be half-truths, misleading, or false. 21 C.F.R. § 341.74(b)(3)(vi); 21 C.F.R. § 341.74(c)(4)(v).

9. The Product contains and makes other representations and omissions which are false or misleading.

10. Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

11. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

12. Defendant sold more of the Product and at higher prices than it would

3

have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

13. Had Plaintiff and proposed class members known the truth, they would not have bought the Product or would have paid less for it.

14. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $4.99 for 4 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

15. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

16. The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

17. Plaintiff Philip Amara is a citizen of Florida.

18. Defendant Publix Super Markets, Inc. is a Florida corporation with a principal place of business in Lakeland, Polk County, Florida

19. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen

20. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

21. The Product is available to consumers from Defendant's retail stores and its website.

22. Venue is in the Tampa Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in Pasco County, i.e., Plaintiff's purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

23. Plaintiff Philip Amara is a citizen of Hudson, Pasco County, Florida.

24. Defendant Publix Super Markets, Inc. is a Florida corporation with a principal place of business in Lakeland, Florida, Polk County.

25. Publix supermarkets were founded in 1930 by George W. Jenkins.

26. Since its founding, the company has stayed true to its founder's philosophy of treating employees and customers like family.

27. Publix is the largest employee-owned company in the United States.

28. Every year, Publix is hailed as the No. 1 supermarket for customer satisfaction, one of Fortune's "100 Best Companies to Work For," and a model for its sustainability efforts and community involvement.

29. Publix ranks No. 1 on Fortune's 'World's Most Admired Companies' in the food store category.

30. These rankings are based on evaluations by Publix workers and others in its industry, in areas from investment value to social responsibility.

31. Publix is one of a handful of grocery chains in the United States with

over 1,000 locations.

32. Publix operates throughout the Southeastern United States, with locations in Florida, Georgia, Alabama, South Carolina, Tennessee, North Carolina, and Virginia.

33. Consumers choose Publix because it embodies its well-known slogan, "Where Shopping Is a Pleasure," based on its convenience, cleanliness, ease of navigation, friendly workers and its private label products.

34. While Publix stores sell leading national brands, they sell a large number of products under the Publix private label brands.

35. Private label products are made by third-party manufacturers and sold under the name of the retailer, or its sub-brands.

36. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

37. Products under the Publix brand have an industry-wide reputation for quality and value.

38. In releasing products under the Publix brand, Defendant's foremost criteria was to have high-quality products that were equal to or better than the national brands.

39. Defendant is able to get national brands to produce its private label items due its loyal customer base and tough negotiating.

40. That Publix branded products met this high bar was proven by focus

groups, which rated them above the name brand equivalent.

41. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

42. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

43. Private label products under the Publix brand benefit by their association with consumers' appreciation for the Publix brand as a whole.

44. The development of private label items is a growth area for Publix, as they select only top suppliers to develop and produce Publix products.

45. Arizona is a leading seller of non-carbonated beverages for over four decades.

46. The Product is available to consumers from Defendant's retail stores and its website.

47. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at Publix, at locations including 13752 Little Rd, Hudson, FL 34667 between August 2021 and October 2021, among other times.

48. Plaintiff believed the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

49. Plaintiff bought the Product because he expected it would not cause

drowsiness and did not contain ingredients which could cause drowsiness because that is what the representations said and implied.

50. Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

51. Plaintiff was disappointed because he believed the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

52. Plaintiff bought the Product at or exceeding the above-referenced price.

53. Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

54. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

55. The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

56. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

57. Plaintiff is unable to rely on the labeling and representations not only

of this Product, but for other similar oral antitussives, because he is unsure whether those representations are truthful.

## Class Allegations

58. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Florida Class:** All persons in the State of Florida who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Georgia, Alabama, South Carolina, Tennessee, North Carolina, and Virginia, who purchased the Product during the statutes of limitations for each cause of action alleged.

59. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

60. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

61. Plaintiff is an adequate representative because his interests do not conflict with other members.

62. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

63. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

64. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

65. Plaintiff seeks class-wide injunctive relief because the practices continue.

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.

### (Consumer Protection Statute)

66. Plaintiff incorporates by reference all preceding paragraphs.

67. Plaintiff and class members desired to purchase a product that would not cause drowsiness and did not contain ingredients which could cause drowsiness.

68. Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

69. Defendant misrepresented the Product through statements, omissions,

ambiguities, half-truths and/or actions.

70. Plaintiff relied on the representations that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

71. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

72. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

73. Defendant intended that each of the members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

74. As a result of Defendant's use or employment of artifice, unfair or deceptive acts or business practices, each of the members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

75. Defendant's conduct showed motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

Breach of Contract

76. Plaintiff entered into a contract with Defendant for purchase of the

Product.

77. The terms of the contract provided that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

78. Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

79. Plaintiff was damaged by the breach, and those damages include the purchase price.

<u>Breaches of Express Warranty,</u>

<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>

<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

80. The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it would not cause drowsiness and did not contain ingredients which could cause drowsiness.

81. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

82. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

83. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product would not cause drowsiness and did not contain ingredients which

could cause drowsiness.

84. Defendant's representations affirmed and promised that the Product would not cause drowsiness and did not contain ingredients which could cause drowsiness.

85. Defendant described the Product as one which would not cause drowsiness and did not contain ingredients which could cause drowsiness, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

86. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

87. This duty is based on Defendant's outsized role in the market for this type of Product, the most admired supermarket chain in the nation, known for its honesty, fairness, expertise, and values, established history of putting customers first.

88. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

89. Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

90. Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

91. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and

consumers, to its main offices, and by consumers through online forums.

92. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

93. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container or label.

94. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it would not cause drowsiness and did not contain ingredients which could cause drowsiness, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

95. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

96. Defendant had a duty to truthfully represent the Product, which it breached.

97. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the most admired supermarket chain in the nation, known for its honesty, fairness, expertise, and values, established history of putting customers first.

98. Defendant's representations regarding the Product went beyond the

specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

99. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

100. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

101. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

102. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

103. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would not cause drowsiness and did not contain ingredients which could cause drowsiness.

104. Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity, through statement and omission, of the representations.

105. Defendant knew of the issues described here yet did not address them.

106. Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

107. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 14, 2022

                                Respectfully submitted,

                                /s/Will Wright

The Wright Law Office, P.A.
Will Wright
515 N Flagler Dr Ste P300
West Palm Beach FL 33401-4326
Tel: (561) 514-0904
willwright@wrightlawoffice.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

Pro Hac Vice Application Forthcoming