UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PHILIP AMARA,

    Plaintiff,

v.                              Case No. 8:22-cv-367-VMC-JSS

PUBLIX SUPERMARKETS, INC.,

    Defendants.
_____/

**ORDER**

This matter is before the Court on consideration of the Motion to Dismiss filed by Defendant Publix Supermarkets, Inc. on May 31, 2022. (Doc. # 22). Plaintiff Philip Amara has responded. (Doc. # 27). For the reasons described below, the Motion is granted. In short, although Amara may have standing to pursue his claims for damages, all of his state-law claims are preempted by federal law and are thus subject to dismissal with prejudice.

**I.**    **Background**

Publix manufactures, labels, markets, and sells an antitussive drug product (a cough suppressant) promoted and labeled as "non-drowsy" (the "Product"). (Doc. # 1 at ¶ 1). According to the complaint, despite being labeled as "non-

1

drowsy," the Product contains an ingredient (dextromethorphan hydrobromide ("DXM")), that Amara alleges is well known for causing drowsiness. (Id. at ¶¶ 4-5). Amara purchased the Product, relying on its "non-drowsy" labeling. He claims that he would not have bought the Product, or would paid less for it, had he known it contained an ingredient that caused drowsiness. (Id. at ¶¶ 10-14).

Based on these allegations, Amara brings this putative class action lawsuit, alleging the following causes of action: (1) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (2) violation of various other states' consumer fraud laws; (3) breach of contract; (4) breach of express warranty; (5) breach of the implied warranty of merchantability/fitness for a particular purpose; (6) violation of the Magnuson Moss Warranty Act ("MMWA"); (7) negligent misrepresentation; (8) fraud; and (9) unjust enrichment. See generally (Id.).

Publix now seeks dismissal of all counts with prejudice. (Doc. # 22). Amara has responded, and the Motion is ripe for review.

II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint

and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, and Rule 12(b)(1) permits a facial or factual attack. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th

3

Cir. 2007). On a Rule 12(b)(1) facial attack, as here, the Court evaluates whether the plaintiff "has sufficiently alleged a basis of subject matter jurisdiction" in the complaint and employs standards similar to those governing Rule 12(b)(6) review. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1335 (11th Cir. 2013).

### III. Analysis

Publix argues that the complaint should be dismissed for three independent reasons.[1] First, pursuant to Rule 12(b)(1), it argues that the complaint should be dismissed because Amara has not sustained an injury-in-fact and therefore lacks standing. Second, Publix maintains that Amara's claims are expressly preempted by federal law. Finally, it argues that Amara has failed to plead facts demonstrating that the "non-drowsy" statement on the label is false, deceptive, or misleading. (Doc. # 22 at 3).

#### A. Standing

Standing is a threshold issue that must be resolved before any other argument. Church v. Accretive Health, Inc., 654 F. App'x 990, 992 (11th Cir. 2016) (explaining that "standing is a jurisdictional threshold question which must

---

[1] Publix also asserts numerous other claim-specific arguments that the Court need not enumerate here.

be addressed prior to and independent of the merits of a party's claims"). To establish standing, a plaintiff: "[(1)] must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' [(2)] that is traceable to the challenged action of the defendant and [(3)] likely to be redressed by a favorable judicial decision." Lexmark Int'l Inc. v. Static Control Components, Inc., 572 U.S. 118, 125 (2014) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

In his complaint, Amara alleged that: "As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $4.99 for 4 oz, excluding tax [], higher than similar products[] represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omission." (Doc. # 1 at ¶ 14). Pointing to this language, Amara argues that he has sufficiently "alleged that []he paid a price premium for the [p]roducts due to the [misleading] labeling" of "Non-Drowsy," which is "all that is required to be pled" to establish injury-in-fact. (Doc. # 27 at 7).

5

An injury in fact is "an invasion of a legally protected interest." Lujan, 504 U.S. at 560. "An injury-in-fact must be both (1) particularized ('affect the plaintiff in a personal and individual way') and (2) concrete ('real, and not abstract')." MSPA Claims 1, LLC v. Tenet Fla., Inc., 918 F.3d 1312, 1318 (11th Cir. 2019) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 339-40 (2016)). An economic injury "is the epitome of 'concrete.'" Id.

Amara alleges that he suffered an actual monetary injury due to Publix's allegedly deceptive label because he paid a price premium. In this Circuit, payment of an allegedly unauthorized premium constitutes an economic injury. See Fox v. Ritz-Carlton Hotel Co., LLC, 977 F.3d 1039, 1043-44, 1047 (11th Cir. 2020) (noting with respect to a FDUTPA plaintiff who sued the Ritz-Carlton for "charg[ing] him an illegal automatic gratuity" without adequate disclosure, and "charg[ing] sales tax on the automatic gratuity . . . no one disputes that [plaintiff] suffered an individual injury-in-fact fairly traceable to Ritz-Carlton's allegedly deceptive practices," because an economic injury is a concrete injury in fact). Here, essentially, Amara alleges that he was deprived of the benefit of his bargain by paying for a product (non-drowsy cough suppressant) that he did not receive. See

6

Carriuolo v. Gen. Motors Co., 823 F.3d 977, 986 (11th Cir. 2016) ("FDUTPA recovery depends on whether plaintiffs pay a premium[.]"); see also Debernardis v. IQ Formulations, LLC, 942 F.3d 1076, 1088 (11th Cir. 2019) ("Because the plaintiffs were deprived of the entire benefit of their bargain, we conclude they adequately alleged that they experienced economic loss."). While Publix argues that Amara needed to plead an actual price differential, it does not point to any binding authority on this point. Thus, for standing purposes, Amara has adequately pled a concrete economic injury in fact. Accordingly, Publix's Motion is denied on this ground.

Publix also argues that Amara lacks standing to seek an injunction because, now that he knows the Product allegedly contains an ingredient that causes drowsiness, he is not likely to buy the Product again, and, therefore, he cannot allege any threat of future harm. Amara responds that he intends to purchase the Product again "when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition." (Doc. # 1 at ¶ 56).

An Article III injury in fact "requires an additional showing when injunctive relief is sought," namely, the plaintiff "must show a sufficient likelihood that he will be

7

affected by the alleged unlawful conduct in the future." Houston, 733 F.3d at 1328. The future injury must be "real and immediate — as opposed to merely conjectural or hypothetical." Id. (internal citation omitted). A threat of future injury "must be certainly impending to constitute an injury in fact." Clapper v. Amnesty Int'l, USA, 568 U.S. 398, 409 (2013) (internal citations omitted) (emphasis in original).

Here, Amara has not alleged any future harm to himself that is real and immediate and/or certainly impending. Instead, he offers only a speculative and conjectural statement that he intends to purchase the Product at some uncertain future date. As Amara fails to allege any threat of imminent future injury to himself, he lacks standing to pursue injunctive relief. As a result, Publix's Motion is granted with respect to Amara's requests for injunctive relief.

### B. Federal preemption

Congress has expressly preempted certain claims with respect to over-the-counter ("OTC") drugs. With limited exceptions, "no State or political subdivision of a State may establish or continue in effect any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement" for OTC drugs in the Federal

8

Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). 21 U.S.C. § 379r(a). The Supreme Court has interpreted statutes that pre-empt state "requirements" as preempting, among other things, common-law causes of action. Riegel v. Medtronic, Inc., 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties."). Thus, to determine whether the FDCA preempts Amara's state-law claims, the Court must determine first whether the federal government has established requirements applicable to the Product at issue here. If so, it must next determine whether Amara's claims are based upon state requirements with respect to the Product that are "different from or in addition to, or that [are] otherwise not identical with" the federal requirements. See Id. at 321-22 (setting out similar analytical framework with respect to preemption under Section 360k, which pertains to state regulation of medical devices).

Publix states that the FDA has issued a final monograph for antitussives that sets forth the specific disclosures that manufacturers must make on labels for products that contain DXM (the "Monograph"). (Doc. # 22 at 8). The Second Circuit has laid out the FDA's monograph process:

9

> Under [the monograph system for OTC drugs], the FDA issues a detailed regulation — a "monograph" — for each therapeutic class of OTC drug products. Like a recipe, each monograph sets out the FDA-approved active ingredients for a given therapeutic class of OTC drugs and provides the conditions under which each active ingredient is [generally recognized as safe and effective ("GRAS/E")]. FDA excludes from its monographs any active ingredients or uses of active ingredients that it has determined either not to be GRAS/E or for which there is insufficient data to confirm whether they are GRAS/E.

Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin., 710 F.3d 71, 75 (2d Cir. 2013), as amended (Mar. 21, 2013).

The FDA's Monograph for the "labeling of antitussive drug products" provides certain requirements for products containing DXM, including label warnings and dosages. See 21 C.F.R. § 341.74(c)(4)(v), (d)(1)(iii). The Monograph only mandates warnings about drowsiness for oral antitussives containing diphenhydramine citrate or diphenhydramine hydrochloride. Id. § 341.74(c)(4)(viii)-(ix). Thus, the Monograph does not require a disclosure of "drowsiness" as a side effect for products that contain DXM. In light of the Monograph, contained within the federal regulations, the Court holds that the federal government has established requirements applicable to the Product at issue here, which guidance includes the potential drowsiness side effects of certain antitussive medications.

Publix argues that Amara's claims must be dismissed because the Product label complies with the FDA Monograph, and Amara cannot use state law to impose additional, different, or non-identical labeling requirements. Amara agrees about the preemption standard generally and agrees that the term "non-drowsy" is not "required or approved" by the Monograph. (Doc. # 27 at 3). Amara instead argues that because Publix voluntarily added the affirmative misrepresentation of "non-drowsy" to the Product labeling, requiring it to remove this statement would impose no additional disclosure requirements, citing Lawson-Ross v. Great Lakes Higher Education Corp., 955 F.3d 908 (11th Cir. 2020). (Id.). But Lawson-Ross is readily distinguishable – it dealt with an entirely different statute (the Higher Education Act), which merely preempted state laws requiring student loan servicers to make *additional* disclosures beyond what the federal statute required. Because the plaintiff there sought to attack affirmative misrepresentations made by loan servicers, the claims fell outside of the statute's preemption language. Id. at 916-18. As will be described further below, case law that is more on point, dealing with the FDCA, leads to the conclusion that Amara's state-law claims are preempted.

Amara appears to argue that he is not seeking to add a drowsiness warning to the Product; rather, he seeks removal of the term "non-drowsy," which he claims is false and misleading. But the Court agrees with Publix that this is a distinction without a difference. The Eleventh Circuit has explained that a state-law requirement is not "identical to" federal requirements if the state requirement "directly or indirectly imposes obligations or contains provisions . . . that are not imposed by or contained in the applicable federal regulation." Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1195 (11th Cir. 2018) (pertaining to a different section of the FDCA (Section 343q) that similarly expressly preempts state laws that establish "any requirement for nutrition labeling of food that is not identical" to the federal Act's requirements). In Hi-Tech, the Eleventh Circuit upheld the district court's determination that the plaintiff's state-law misrepresentation claims were preempted by the FDCA because the state-law claim would impose liability for conduct that does not violate the Act. Id. ("Hi-Tech's state-law claim [under the Georgia Uniform Deceptive Trade Practices Act] is preempted because it would impose liability for labeling that does not violate the Food, Drug, and

Cosmetic Act or the regulations that carry it into effect."). The same is true here.

The main thrust of Amara's complaint, and every count within that complaint, is that the Product's labeling as "non-drowsy" is false and misleading. (Doc. # 1 at ¶¶ 7-8, 69-70, 73-74, 77-78, 80, 84-85, 97, 101, 103, 107). Amara would have this Court hold Publix liable for labeling the product "non-drowsy" when such labeling complies with the FDA's Monograph. See Carter v. Novartis Consumer Health, Inc., 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) ("The touchstone of preemption under § 379r is the effect that a finding of liability on a particular claim would have on the Defendant[ ]. . . . As long as that claim imposes a 'requirement' that is at variance with FDA regulations, it is preempted.").

Amara argues that the FDCA regulations also require that a product's labeling not be "false or misleading in any particular." (Doc. # 27 at 4 (citing 21 C.F.R. § 330.1(c)(1) (drug must be "labeled in compliance with chapter V" of the Act, 21 U.S.C. §352(a)(1)) and 21 C.F.R. § 341.1(a) (over-the-counter cough medicines must meet "each of the general conditions established in § 330.1"))). But Amara ignores that, per those same regulations, an OTC drug "is generally recognized as safe and effective *and is not misbranded* if it

13

meets each of the conditions contained in this part and each of the conditions contained in any applicable monograph." 21 C.F.R. § 330.1 (emphasis added). In other words, "[i]f successful, this litigation would do exactly what Congress, in passing section 379r of the FDCA, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation." Bowling v. Johnson & Johnson, 65 F. Supp. 3d 371 (S.D.N.Y. 2014) (holding that the applicable standard is "whether state law diverges from federal law *at all* [and where federal requirements address the subject matter being challenged] the state requirements are not permitted unless they are *identical* to federal standards" (quotations omitted) (emphases in original)). Thus, all of Amara's state-law claims are preempted by the FDCA because they seek to impose a labeling requirement that is "different from or in addition to, or that is otherwise not identical with, a requirement" for OTC drugs in the applicable regulations. See 21 U.S.C. § 379r(a).

Amara brought only one claim under federal law – his MMWA claim. But a breach of warranty claim under the MMWA is dependent upon a viable underlying state breach of warranty claim. Kelly v. Lee Cnty. R.V. Sales Co., No. 8:18-cv-424-JDW-JSS, 2019 WL 5887482, at *3 (M.D. Fla. Nov. 12, 2019). As

the underlying state-law warranty claims are due to be dismissed, the MMWA claim will be dismissed as well. Additionally, Amara fails to meet the requirement under the MMWA that the amount in controversy for any individual claim exceeds $25, 15 U.S.C. § 2310(d)(3)(A), since he claims he purchased the product for approximately $4.99.

Finally, because federal preemption cannot be cured by amendment, the Court grants dismissal of this case with prejudice.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1) The Motion to Dismiss filed by Defendant Publix Supermarkets, Inc. (Doc. # 22) is **GRANTED.** Plaintiff's claims are dismissed with prejudice.

(2) The Clerk is directed to terminate any pending motions or deadlines and thereafter **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 12th day of August, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE